(No. 11742.—Decree affirmed.)

EDITH KEPLER *et al.* Appellees, *vs.* OLIVE CASTLE, Appellant.

*Opinion filed December 19, 1917.*

1. DEEDS—*the word "heirs" will not be construed to mean "children" unless deed indicates such intention.* Where there is nothing in a deed to indicate that the word "heirs" is intended to have any other than its technical legal meaning the word cannot be construed to mean "children."

2. SAME—*a deed to the "heirs" of a living person is void.* A living person has no heirs, and therefore a deed to the "heirs" of a living person, without specifying the names of the "heirs," describes no one as grantee and is void.

3. TRUSTS—*when resulting trust arises.* Where one person purchases land with money belonging to another and takes the title in his own name without the other's consent a resulting trust arises in favor of the party furnishing the money.

APPEAL from the Circuit Court of Schuyler county; the Hon. GUY R. WILLIAMS, Judge, presiding.

J. M. LORING, and L. A. JARMAN, for appellant.

B. O. WILLARD, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Schuyler county partitioning eighty acres of land, described as the south half of the southeast quarter of section 3, in township 1, north, range 2, west, in Schuyler county, Illinois.

Appellees, Edith Kepler, (individually and as administratrix of the estate of her husband, Gillespie Kepler, deceased,) and Gertrude Speed and Oscar Kepler, children of the deceased and Edith Kepler, widow, filed their bill October 25, 1916, against appellant, Olive V. Castle, another child of Gillespie Kepler, claiming that the three children of Kepler were the owners of the land as tenants in common, subject to the dower and homestead rights of Edith Kepler, widow of said Kepler, and that they derived title thereto from their father, Gillespie Kepler. The bill alleged that Kepler purchased the land October 7, 1865, from William C. Zimmerman for the sum of $3000; that Archibald B. Knode was the administrator or executor of George Gillespie on said date, and had in his hands or under his control as such administrator or executor $3000 belonging to Kepler, and without the knowledge or consent of Kepler, Knode took title to the land in himself; that out of the funds belonging to Kepler, Knode paid Zimmerman $2000 on the purchase price of the land and gave a mortgage on the same land to Zimmerman to secure a note for $1000. The bill alleges this note was afterwards assigned by Zimmerman to Thomas Wilson, and on October 3, 1866, Kepler paid the mortgage off, and Wilson, the assignee, released it of record; that afterwards, on October 15, 1867, Knode and wife executed a paper purporting to be a deed for said land to "the legal heirs of Gillespie Kepler and Edy Kepler;" that Knode retained in his possession said deed until about February 21, 1878; that at the time the deed from Knode was executed Gillespie Kepler and Edy

Kepler were living and therefore had no heirs, and it is alleged said purported deed was invalid and void and passed no title. The bill further alleges that Kepler went into possession of the land October 9, 1865, as purchaser and owner, and continued in the exclusive, uninterrupted, hostile and adverse possession thereof from that time until his death, on September 3, 1916; that he paid all taxes on the land, · fenced it, cleared some of it, farmed, cultivated and improved it, and exercised all rights of ownership over it and claimed to own it. The bill further alleges that Knode, who resided in the State of Indiana, died in 1886, leaving no widow but leaving William and Clay Knode his only surviving children and heirs.. The bill further alleges that all of the three children of Gillespie and Edith Kepler were born prior to the delivery of the purported deed from Knode in February, 1878; that Kepler had no knowledge the deed was made to the legal heirs of himself and wife but supposed he was the grantee. The bill alleges Edith Kepler was on October 25, 1916, duly appointed administratrix of her husband's estate; that the personal assets of said estate are insufficient to pay the debts and widow's award and that it will be necessary to sell real estate; that Kepler and his wife lived on the land as their homestead at the time of his death, and that the widow is entitled to homestead and dower therein. The prayer of the bill was ·that the title to the land be decreed to be in the three children of Gillespie Kepler as tenants in common, each seized of the undivided one-third, subject to the dower and homestead of the widow, and that the title be quieted by the decree. It was further asked in the bill that if a sale was .made the court order enough of the proceeds of the sale paid to the administratrix to discharge the debts and the widow's award and that dower and homestead be assigned the widow.

The defendant to the bill, Olive V. Castle, daughter of Gillespie Kepler and appellant here, in her amended answer to the bill denied the purchase of the land in 1865 from

Zimmerman, as alleged in the bill; denied that Archibald
B. Knode was administrator or executor of the estate of
George Gillespie and had in his hands, as such, $3000 be-
longing to Kepler; denied that Knode took title to the land
without the knowledge or consent of Kepler; denied Knode
paid Zimmerman $2000 on the purchase price of the land,
and denied Kepler paid Wilson, as assignee of Zimmerman,
$1000. The answer admits the execution of the purported
deed October 15, 1867, by Knode, conveying the land to
the legal heirs of Gillespie and Edy Kepler, who were liv-
ing at that time, but denies Knode retained possession of
the deed until February 21, 1878, and denies that the equi-
table title to the land passed to Kepler at the time it was
purchased. The answer further denies that Kepler, during
his lifetime and for more than forty years before his death,
claimed any title to or interest in said land. The answer
avers that respondent was the only child of Gillespie and
Edith Kepler living at the time the deed was made and de-
livered by Knode, October 15, 1867; that the words "legal
heirs of Gillespie Kepler and Edy Kepler," mean and should
be construed as the child or children of said Gillespie and
Edy Kepler, and that the title to said land became and was
invested in respondent. The answer further avers that on
November 27, 1916, (which was subsequent to the com-
mencement of this · suit,) William P. Knode and H. C.
Knode, the only children and heirs-at-law of Archibald B.
Knode, conveyed the land in controversy to respondent as
grantee, and that if it should be found that under the law
respondent did not become seized, in fee simple, of the title
by the deed from Knode of October 15, 1867, she claims
title in fee simple by the conveyance of November 27, 1916,
from the Knode heirs. The answer further denies that
Kepler claimed to own the land but that he believed and
claimed that it belonged to his children, and that he occu-
pied, used and managed it as their property. A cross-bill

was filed by appellant setting up substantially the same facts as set up in the answer.

The cause was referred to the master in chancery to take and report to the court the testimony. On the hearing before the chancellor, upon the testimony reported by the master, the court entered a decree finding that the land was purchased with the money of Gillespie Kepler on October 7, 1865, and title taken in the name of Archibald B. Knode; that the deed from Knode to the legal heirs of Gillespie and Edy Kepler was void and passed no title, but that the equitable title passed to Kepler at the time of the purchase by reason of the fact that he paid the purchase price. The decree further found that Kepler went into possession of the land in October, 1865, and continued in the exclusive, uninterrupted, open, hostile and adverse possession, claiming to own it, until his death; that he paid all taxes, fenced the land, cleared some of it, cultivated and improved it and exercised over it the rights of ownership, and that at the time of his death he was the owner in fee simple of said land, and that upon his death his said three children became seized of the title to said premises as tenants in common, subject to the dower and homestead rights of the widow. The decree found that the deed of November 27, 1916, from the heirs of Archibald B. Knode to appellant conveyed to her no title or interest in the premises. Partition was decreed in accordance with the rights of the parties.

In the original answer of appellant, which was introduced in evidence at the hearing, she admitted the deed from Knode to the "legal heirs" of Gillespie and Edy Kepler "passed no legal title to said land and that the legal title remained in the said Archibald B. Knode." It is upon that basis she claims to have acquired the title through the deed executed after this suit was brought, by the heirs of Knode. She also claims to be the sole owner of the land on the theory that the deed from Knode did operate to con-

vey the title; that the word "heirs" in said deed meant and should be construed to mean "children," and that at the time the deed was executed, she being the only child then born to Gillespie and Edy Kepler, the entire title vested in her. There is nothing in the deed to indicate that the word "heirs" was intended to have any other than its technical legal meaning, and no warrant is found in the instrument for construing the word "heirs" to mean "children." (*Ætna Life Ins. Co.* v. *Hoppin*, 249 Ill. 406.) "A living person has no heirs, and therefore a deed made to heirs of a living person without specifying the names of the heirs, so called, describes no one as grantee and the deed is void." (*Duffield* v. *Duffield*, 268 Ill. 29, and cases there cited.) The decree correctly found that the deed was void and vested no title in anyone.

The proof warranted the court in finding and decreeing that the land was originally purchased with Gillespie Kepler's money. Appellant herself admits that fact, and her knowledge of it, in a letter to the Knode heirs dated November 6, 1916, in which she asked them if they would make her a quit-claim deed. There is also a memorandum on the back of the deed from Archibald B. Knode in his handwriting, as follows:

*"To whom it may concern:*

"It is considered that this deed is made and delivered by me to Gillespie Kepler and wife for their legal heirs, as specified herein. Please hand this deed over to Kepler and wife and heirs for record, as it is their property to all intents and purposes and I am only holding it by agreement of parties for the time being. *Hagerstown, Ind., Oct. 15, 1867.*      A. B. KNODE."

To whom the deed was sent by Knode and when it was sent does not appear, except that it appears not to have been delivered until about the time it was recorded, which was in February, 1878. At that time the other two children of Kepler and wife had been born. Kepler having furnished the money to purchase the land and Knode having taken title in his own name, a resulting trust arose in

favor of Kepler. (*Elliott* v. *Prater,* 260 Ill. 64; *Harrison* v. *Harrison,* 265 id. 432; *McDonald* v. *Stow,* 109 id. 40.) On this ground the decree adjudging and determining the interests of the parties and awarding partition is supported by the law and the evidence, and we deem it unnecessary to pass on any other question raised.

The decree is affirmed.                    *Decree affirmed.*